IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31348-4-III |
| MONIQUE ADEL MCDEVITT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DAVID ALLEN DAVIS, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. —Appellant Monique McDevitt[1] challenges the trial court's

modification of the final parenting plan. We affirm with leave for Ms. McDevitt to

pursue further proceedings in the trial court.

FACTS

The marriage of Ms. McDevitt and respondent David Davis dissolved around the

time of the birth of their only children, twin sons. A final parenting plan was entered

September 1, 2009, when the two boys were one year old. The plan made Ms. McDevitt

---

[1] Ms. McDevitt has remarried and now uses the surname Putz, but we use the
name McDevitt to be consistent with the case title and her briefing.

the custodial parent and permitted her to relocate with the children to Hawaii, near her parents, while Mr. Davis remained in Spokane County.

Given the distance between Hawaii and Spokane, Ms. McDevitt had near exclusive custody as well as decision-making authority for the children. Mr. Davis was allowed three hours of visitation per day should he visit Hawaii, and Ms. McDevitt was required to notify him and accommodate visitation should she be in the continental United States. The parenting plan also specified that either party could seek review of the placement schedule when the children were two.

A court commissioner reviewed the original order on January 25, 2011, and made several clarifications to visitation details. The commissioner also reserved summer and Christmas visitation to a future hearing. Ten months later, Mr. Davis filed a petition for modification or adjustment; the children were then three. He sought a minor modification and wrote that the original decree contemplated modification.

The commissioner denied the petition without prejudice on January 24, 2012, determining that there was no statutory basis for the petition since her previous ruling had been just one year earlier. Mr. Davis then filed an amended minor modification request. One day after that request was filed, Ms. McDevitt filed a notice of intent to relocate the children from Hawaii to Colorado where her new husband would be employed.

The commissioner again heard the matter and found that the mother's petition, but not the father's modification request, justified a hearing. The matter was set over for trial

and eventually heard before Judge Salvatore F. Cozza that fall. Mr. Davis filed a proposed parenting plan that allowed him one three-night weekend with the children in Denver every other month and allowed him one-half of the children's' school vacations (including summer break) once they started school. At trial, Ms. McDevitt testified that she and the children had been living in Colorado since the time of the relocation request.

Two days after the completion of trial, Judge Cozza announced his decision by letter. The letter began by noting that Judge Jerome J. Leveque had originally contemplated that visitation would be reviewed once the boys had reached age two and, "thus it is proper apart from the differences of the parties to take a fresh look at things now." Clerk's Papers (CP) at 87. Judge Cozza noted that but for the relocation to Hawaii, the parties would have been entitled to equal visitation and decision-making responsibility. He also noted that neither parent was innocent with respect to complications that arose with the post-dissolution relationship, but was concerned that the mother had not always been acting in good faith. Judge Cozza ordered that Mr. Davis's proposed parenting plan be adopted and that both parents have joint decision-making.

Ms. McDevitt moved for reconsideration, arguing that the ruling worked a major modification without a request from the parties or sufficient findings under the statute. Eight days later, Ms. McDevitt moved to withdraw her intent to relocate, asserting that her husband had lost his job and the couple intended to return to Hawaii with the

3

children. Three days later, Judge Cozza denied reconsideration and entered orders implementing his decision and setting forth the new parenting plan.

Ms. McDevitt timely appealed. This court initially set the matter for consideration on a non-argument calendar, but re-set the case for oral argument so that the parties could address the decision in *In re Parentage of C.M.F.*, 179 Wn.2d 411, 314 P.3d 1109 (2013). Ms. McDevitt's counsel also advised us that she had in fact relocated to Hawaii with her children and spouse.

## ANALYSIS

Ms. McDevitt argues both that the trial court lacked authority to modify the parenting plan after she withdrew her relocation request and that the trial court's ruling exceeded its authority under its minor modification authority. We do not agree that the latter contention is at issue in this case and also believe that the attempt to withdraw the relocation request was ineffectual in this context. We address those two contentions in that order.

The ability to modify a parenting plan is strictly controlled by statute. RCW 26.09.260 lists several different bases on which a parenting plan or custody ruling is subject to modification. This court considers a challenge to a modification ruling under well-settled standards. The modification order is reviewed for abuse of discretion. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202, *review denied*, 169 Wn.2d 1015 (2010). Discretion is abused when it is exercised on untenable grounds or for

4

untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

There is a strong presumption against modification. *In re Marriage of McDole*, 122

Wn.2d 604, 610, 859 P.2d 1239 (1993).

Modification follows a two-stage process. First, the party seeking modification

must establish adequate cause to alter the existing plan—typically that requires evidence

of a significant change of circumstances unknown at the time of the original parenting

plan. *Zigler*, 154 Wn. App. at 809. If adequate cause is established, the matter will

proceed to a hearing. *Id.*

Ms. McDevitt argues that the court bypassed this process in considering

modification based on Judge Leveque's initial determination that the parenting plan could

be re-opened when the children turned two. She bases her argument on the previously

quoted line from Judge Cozza's letter decision. We believe she read too much into that

comment, which was simply Judge Cozza's recognition that Judge Leveque had

anticipated that parenting plan arrangements would need to be revisited when the children

were a bit older. That Judge Cozza would use that recognition as a jump-off point for

starting his analysis of the circumstances was understandable. However, it was not the

basis for re-opening the parenting plan.

In *C.M.F.*, the trial court had adjudged the respondent as father for purposes of

entering a parentage decree and left the child with the mother, subject to one of the

parties to file a parenting plan to set visitation. 179 Wn.2d at 416. The court determined

that the trial court had effectively reserved the parenting plan for an indefinite period and ruled that such open-ended plans were contrary to the legislative intent and common law authority. *Id.* at 427-28.

It certainly is arguable that *C.M.F.* would have prevented Judge Cozza from re-opening the parenting plan based solely on Judge Leveque's original determination that the plan could be reviewed when the children turned two.[2] As noted, however, that was not the basis on which Judge Cozza acted. The commissioner set the matter for hearing solely on the basis of Ms. McDevitt's relocation petition. CP at 68. Judge Cozza's order also solely invokes the relocation statute as the basis for revising the parenting plan. CP at 130.

Parenting plan modification based on relocation is governed by RCW 26.09.260(6). That statute provides:

(6) The court may order adjustments to the residential aspects of a parenting plan pursuant to a proceeding to permit or restrain a relocation of the child. The person objecting to the relocation of the child or the relocating person's proposed revised residential schedule may file a petition to modify the parenting plan, including a change of the residence in which the child resides the majority of the time, without a showing of adequate cause other than the proposed relocation itself. A hearing to determine

---

[2] In the course of its analysis, the *C.M.F.* majority noted several cases where trial courts had reserved parenting plans for one year periods (as Judge Leveque did here). 179 Wn.2d at 425-27. The court used these cases, without necessarily approving them, as a contrast for the open-ended reservation used in *C.M.F.* While the plan entered in this case was also a one-year reservation, Judge Cozza did not review the plan until several years later.

6

adequate cause for modification shall not be required so long as the request for relocation of the child is being pursued. In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560. Following that determination, the court shall determine what modification pursuant to relocation should be made, if any, to the parenting plan or custody order or visitation order.

The third sentence clearly states that the relocation petition itself is a basis for modifying a parenting plan. The second sentence of subsection (6) also expressly permits consideration of new parenting plans as a result of a relocation request. As the commissioner's order referring the case for hearing and the trial judge's own findings both reflect that the relocation petition was the basis for the modification, there is no serious contention that the trial court acted on the basis of an open-ended reservation of the parenting plan.

However, the third sentence also states that an adequate cause for modification hearing "shall not be required *so long as the request for relocation of the child is being pursued.*" Ms. McDevitt strenuously argues that the emphasized language of the statute means that the trial court had to abandon the parenting plan modification once she indicated her intent to return to Hawaii. She contends that this situation is controlled by the decision in *In re Marriage of Grigsby*, 112 Wn. App. 1, 57 P.3d 1166 (2002).

In *Grigsby*, the mother petitioned for relocation to Texas from Washington due to her fiancé receiving a job offer, while the father attempted to restrain the mother from

7

leaving the state. *Id.* at 5-6. At the end of a three-day trial, the judge denied the motion to relocate and did not address the parenting plan, leaving that to the parties if they deemed it necessary. *Id.* at 6. The mother's counsel promptly announced that the mother no longer desired to relocate. *Id.*

Despite the denial of the relocation request, the father sought a hearing to modify the parenting plan by making him the primary care parent. *Id.* The court granted the request and also made minor modifications to the residential schedule, in part so that there would be no danger of uprooting the children should the fiancé find different out-of-state employment. *Id.* at 6, 15-16. The mother appealed. *Id.* at 6.

Division One of this court reversed the parenting plan modification, concluding that the previously emphasized language of the third sentence ("so long as the relocation is being pursued") precluded the modification of the parenting plan once the mother withdrew her request. *Id.* at 16-17. Having followed the same procedure as the mother in *Grigsby*, Ms. McDevitt understandably believes that the same outcome should result here.[3] However, there are two significant factual differences between this case and that one.

---

[3] In light of our disposition, we need not decide whether we entirely agree with *Grigsby*. We do note that the statute only waives the requirement of an adequate cause hearing when a relocation request is pursued; the statute does not similarly speak to the trial court's authority to modify a parenting plan when a request is no longer being pursued. While the *Grigsby* reading of the statute would promote judicial economy where (as there) the court has not already acted on the parenting plan modification, there

8

The biggest difference is the fact that unlike the mother in *Grigsby*, Ms. McDevitt actually did relocate while the motion was pending. Judge Cozza here was thus dealing with an accomplished relocation rather than an anticipated one. It also was the second relocation Ms. McDevitt had made since the dissolution had commenced. Under these circumstances, we think the trial court properly could act upon the actual factual circumstances before it rather than on the anticipated future conduct of Ms. McDevitt.

The other significant difference is that unlike *Grigsby*, here the trial court had ruled on the parenting plan modification before Ms. McDevitt acted to withdraw her request to relocate. Allowing Ms. McDevitt to withdraw her request at that stage essentially gave her veto power over a decision she did not like. A parent, rather than the trial judge, then would be the one who decided what was in the current best interests of the children. Such an outcome is contrary to the legislative intent of the parenting plan statute.

For both reasons, we do not believe *Grigsby* controls the outcome here. Having been presented with an actual move to Colorado, and no objection to the move, the trial court approved the relocation and entered a parenting plan appropriate to the new

---

is little judicial economy when the withdrawal comes at the end of a contested hearing after the court has been supplied significant information concerning the current best interests of the children. Although the legislature may have intended to also foreclose review of the parenting plan when relocation is no longer on the table, we normally would expect a clearer limitation on the court's otherwise broad authority to make the parenting plan modification decision.

9

geographic relationship and the age of the children. This resulted in more equal visitation and the sharing of parental responsibility, an outcome that normally would have occurred in the original parenting plan if Ms. McDevitt had not relocated to Hawaii in the first place. Under these circumstances, we see no error. The fact that Ms. McDevitt then wanted to return to Hawaii, even for a legitimate reason, did not alter the fact that Judge Cozza had authority to revise the parenting plan to fit the changed realities of the parties then before him.

Since Ms. McDevitt has returned to Hawaii, she is free to file another relocation petition. The trial court is affirmed.[4]

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.

---

[4] Ms. McDevitt asks us to stay the imposition of the modification order requiring the children to spend the summer with Mr. Davis. We deny that motion with leave for her to renew it in the trial court if she files a new relocation petition.

10