IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re | ) | No. 38037-8-III |
| | ) | |
| MICHAEL VICTOR JAMES | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| TINA M. COOGLER, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — Michael James, father of one daughter, appeals the Washington

superior court's dismissal of his petition to modify a 2018 Arizona court parenting plan.

The superior court ruled that James failed to establish a change in circumstances. We

reject James' contention that the superior court should have applied Arizona law to the

petition. Nevertheless, we conclude that the superior court commissioner misread a

critical section of James' declaration. Thus, we remand for further proceedings.

FACTS

Michael James and Tina Coogler begot a daughter, Mary, a pseudonym, in 2014,

in Maricopa County, Arizona. James and Coogler never married.

In 2016, Michael James and Tina Coogler agreed to a parenting plan that an

Arizona court adopted. Under the 2016 plan, Coogler gained primary custody, while

James could exercise up to eight hours of unsupervised visitation every other week. The

plan included a "Periodic Review" clause that directed the parties to review whether the

parenting plan continued to serve the best interests of the Child. The plan also read that

Arizona law controlled the construction and interpretation of its provisions.

In February 2018, Michael James relocated to Connecticut to obtain a new job as

an airline pilot. In July 2018, Tina Coogler and Mary relocated to Spokane. In

September 2018, James and Coogler entered a new parenting plan agreement in the

Arizona court. The 2018 parenting time agreement declared:

> Father shall exercise parenting time with Child in the city where
> Mother and Child reside every month, for a maximum of three days. For
> the first three visits, Child shall remain in Father's care one (1) overnight.
> Thereafter, Child shall remain in Father's care during these visits for two
> (2) overnights. Father shall provide Mother 60 days' notice of his intended
> visit. All parenting time exercised by Father shall be with Father and not
> delegated to another member of Father's family. The Child shall be in
> Mother's care at all other times.

Clerk's Papers (CP) at 163. The 2018 plan also provided that "Any provisions of the

prior [2016 parenting plan] which are not specifically addressed herein, shall remain in

full force and effect." CP at 163.

## PROCEDURE

On September 22, 2020, Michael James filed a petition, in Spokane County

Superior Court, to change the parenting plan. James professed difficulty in following the

2018 parenting plan because of his move to Connecticut, because of a change in his work

schedule, and because he lacked a choice in both changes.

Michael James' petition to modify the parenting plan acknowledged that Mary resided in Washington State. James averred that the requested change would impact Mary's schedule on more than twenty-four full days, but fewer than ninety overnights a year. Under his proposed parenting plan, Tina Coogler would maintain majority custody of Mary during the school year. Mary would spend one weekend per month with James in Connecticut whenever Mary's school schedule provided a three-day weekend. James would also enjoy the option of exercising weekend residential time in Spokane one weekend per month. During the summer, James would have eight consecutive weeks of custody. James would also exercise custody during Mary's spring breaks, Thanksgiving breaks on odd years, and for ten consecutive days every winter break.

In a declaration accompanying the petition for modification, Michael James avowed:

> Since the 2018 agreement, things have changed, and I am asking the Court to modify the prior orders.
> . . . I had obtained a new job in Connecticut, and moved there from Arizona in February 2018. Tina moved from Arizona to Spokane in July 2018. *At the time that we agreed to the schedule, I had a different job, and my hours have since changed. . . .*
> . . . .
> *My current job does not allow me three days off, as was the case when we agreed to the current schedule.* It is nearly impossible for me to fly to Spokane and have any meaningful contact with my daughter when I only get two days off in a row.

CP at 22-23 (emphasis added). In a reply declaration, James commented:

> *In February 2019, my work schedule changed where [sic] I only had
> two days off in a row*, making it impossible for me to come to Spokane.
> Until then, I worked four days on, followed by three days off.

CP at 178 (emphasis added).

A superior court commissioner entertained oral argument as to whether Michael

James showed adequate cause to proceed to an evidentiary hearing on his petition to

modify the 2018 parenting plan. At the hearing, James' attorney remarked:

> We're asking the court to modify the parenting plan for a number of
> reasons. *One, my client indicates to you that at the time of this latest
> adjustment was made [sic], he's a pilot, that he had changed his work
> schedule since then*, and he describes a couple of incidences where he was
> working in Puerto Rico and he tells you now that essentially he doesn't
> have three days off like he used to have. So that would be a change in work
> schedule that would allow this court to find adequate cause under [RCW]
> 26.09.260(b).

CP at 225 (emphasis added).

The superior court commissioner dismissed Michael James' petition for lack of

adequate cause to modify the parenting plan. In an oral ruling, the commissioner

reasoned that James' move to Connecticut did not constitute grounds for modification

because James resided in Connecticut on entry of the September 2018 parenting plan.

The commissioner analyzed whether an involuntary change in work schedule justified

modification:

> He does also state that, this is on page two of three, this would be the
> first—the second full paragraph; my current job does not allow me three
> days off as was the case when we agreed to the current schedule. *So the
> current schedule did not allow for three days off. His current work*

4

*schedule does not allow for three days off. Yet, the order was entered in
2018. I am not finding a substantial change in circumstances* in his—in a
sense that, one, I didn't note a claim that it was involuntary even if it was
involuntary it doesn't appear to be a change that was made that would
change the facts as existed by his own statement at the time that the order
was entered in 2018. I will deny the motion for adequate cause and thereby
do not need to rule on the motion for—well, it in effect [sic] to deny the
temporary order as well.

CP at 243 (emphasis added).

Michael James moved the superior court to revise the commissioner's ruling. The

superior court denied the motion for revision.

LAW AND ANALYSIS

Arizona Law

On appeal, Michael James assigns error to the superior court's failure to engage in

a conflict of law analysis that could lead to the application of Arizona law to the pending

petition for modification. Tina Coogler correctly responds that James raised no conflict

of laws argument before the trial court and James' petition requested modification under

Washington law. Based on RAP 2.5(a), CR 9(k), and RCW 5.24.040, we decline to

address James' foreign law arguments raised for the first time on review.

The first sentence of RAP 2.5(a) declares:

> **Errors Raised for First Time on Review.** The appellate court may
> refuse to review any claim of error which was not raised in the trial court.

(Boldface omitted.) Accordingly, a party may generally not raise a new argument on

appeal that the party did not present to the trial court. *In re Detention of Ambers*, 160

Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the trial court of the

rules of law it wishes the court to apply. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d

351 (1983).

A Superior Court Civil Rule and Washington statute further compel us to decline

review. CR 9(k) declares, with regard to proving foreign law:

> Foreign Law.
> (1) *United States Jurisdictions*. A party who intends to raise an issue concerning the law of a state, territory, or other jurisdiction of the United States shall set forth in the party's pleading facts which show that the law of another United States jurisdiction may be applicable, or shall state in the party's pleading or serve other reasonable written notice that the law of another United States jurisdiction may be relied upon.
> . . . .
> (4) *Failure to Plead Foreign Law*. If no party has requested in pleadings application of the law of a jurisdiction other than a state, territory or other jurisdiction of the United States, the court at time of trial shall apply the law of the State of Washington unless such application would result in manifest injustice.

(Boldface omitted.) A related statute, RCW 5.24.040, reads:

> This chapter shall not be construed to relieve any party of the duty of hereafter pleading such laws where required under the law and practice of this state.

A party who wishes to rely on foreign law must give notice in his pleading of the foreign

jurisdiction whose law he contends may be applicable to the facts of the case. *Mulcahy v.*

*Farmers Insurance Co. of Washington*, 152 Wn.2d 92, 98, 95 P.3d 313 (2004).

Michael James additionally argues that the trial court should have ordered briefing

on the conflict of laws issue presented by this case in a sua sponte order. James cites no

cases relevant to his argument. We deem James' assignment of error to constitute an unsupported attempt to evade RAP 2.5(a).

## Flexibility Clause

Michael James emphasizes the Arizona parenting plan sentence that directed the parties to review the best interests of Mary every two years. He impliedly contends that this clause demands that the Washington superior court loosen the requirement of a substantial change in circumstances to support a plan modification. We also decline to entertain this assignment of error because James never forwarded this argument before the superior court.

## Adequate Cause

Michael James next contends that, even if Washington law controls his petition to modify the parenting plan, he presented adequate cause for a change. He emphasizes that the 2018 parenting plan lacks practicality. He also suggests that the superior court misread his declaration about an involuntary change in work schedule.

To proceed to an evidentiary hearing on a petition to modify a parenting plan, the petitioner must first submit an affidavit showing adequate cause to alter the existing plan. RCW 26.09.270; *In re Marriage of Zigler*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010). Adequate cause means, at a minimum, evidence sufficient to support a finding on each fact that the movant must prove in order to modify. *In re Custody of T.L.*, 165 Wn. App. 268, 275, 268 P.3d 963 (2011); *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85

P.3d 966 (2004). When assessing adequate cause, the superior court focuses on whether

the moving party's affidavits contain information not considered in the original parenting

plan. *In re Parentage of Jannot*, 110 Wn. App. 16, 25, 37 P.3d 1265 (2002), *aff'd*, 149

Wn.2d 123, 65 P.3d 664 (2003).

A court shall not modify a prior parenting plan unless new facts demonstrate that a

substantial change has occurred in the circumstances of the child or the nonmoving party

and that the modification is necessary to serve the best interests of the child.

RCW 26.09.260(1). A looser standard controls minor modifications to a parenting plan.

RCW 26.09.260(5). The statute declares:

> The court may order adjustments to the residential aspects of a
> parenting plan upon a showing of a substantial change in circumstances of
> either parent or of the child, and without consideration of the factors set
> forth in subsection (2) of this section, if the proposed modification is only a
> minor modification in the residential schedule that does not change the
> residence the child is scheduled to reside in the majority of the time and:
> (a) Does not exceed twenty-four full days in a calendar year; or
> (b) Is based on a change of residence of the parent with whom the
> child does not reside the majority of the time or an involuntary change in
> work schedule by a parent which makes the residential schedule in the
> parenting plan impractical to follow; or
> (c) Does not result in a schedule that exceeds ninety overnights per
> year in total, if the court finds that, at the time the petition for modification
> is filed, the decree of dissolution or parenting plan does not provide
> reasonable time with the parent with whom the child does not reside a
> majority of the time, and further, the court finds that it is in the best
> interests of the child to increase residential time with the parent in excess of
> the residential time period in (a) of this subsection. However, any motion
> under this subsection (5)(c) is subject to the factors established in
> subsection (2) of this section if the party bringing the petition has
> previously been granted a modification under this same subsection within

8

twenty-four months of the current motion.  Relief granted under this section shall not be the sole basis for adjusting or modifying child support.

A trial court's modification order is reviewed for abuse of discretion.  The superior court abuses discretion when it is exercised on untenable grounds or for untenable reasons.  *In re Marriage of McDevitt*, 181 Wn. App. 765, 769, 326 P.3d 865 (2014).

Michael James' arguments focus on RCW 26.09.260(5)(b) permitting modification based on (1) a change in the parent's residence or (2) an involuntary change in work schedule.  With his petition, James highlighted that he relocated to Connecticut and that an involuntary change in his work schedule eliminated his previous three-day off schedule that facilitated visitation to Mary's hometown.  James does not dispute the superior court commissioner's finding that he moved to Connecticut before entry of the 2018 parenting plan.

Michael James attacks the commissioner's conclusion that he failed to demonstrate an involuntary change in work schedule.  Based on the commissioner's oral ruling, we conclude that the court commissioner misunderstood testimony in James' declaration and thereby failed to fully address a change in circumstances.  To repeat, the commissioner commented:

> He [James states] . . . my current job does not allow me three days off as was the case when we agreed to the current schedule.  So the current [2018] schedule did not allow for three days off.  His current [2020] work schedule does not allow for three days off.  Yet, the order was entered in 2018.  I am not finding a substantial change in circumstances in his—in a sense that, one, I didn't note a claim that it was involuntary even if it was

involuntary it doesn't appear to be a change that was made that would change the facts as existed by his own statement at the time that the order was entered in 2018.

CP at 243. The commissioner confusingly refers to both James' 2018 and 2020 work schedules as his "current schedule." But the commissioner's contrasting uses of the past and present tenses suggests that he intended to refer, in the first instance, to James' 2018 work schedule and, in the second instance, to his work schedule as of the 2020 petition.

In rendering his ruling, the court commissioner directed attention to a single sentence in Michael James' opening declaration: "my current job does not allow me three days off *as was the case when we agreed to the current schedule*." CP at 243 (emphasis added). One could read the sentence to mean that, at the time of entry of the 2018 parenting plan, James' employment did not afford him three consecutive days off. Or one could read the sentence to declare that, at the time of entry of the 2018 Arizona plan, James' work schedule afforded him three consecutive days away from work. Because of the court commissioner's ruling, the commissioner utilized the first reading of the confusing sentence.

Other portions of Michael James' declaration and his counsel's argument during the hearing established that, at the time of the 2018 parenting plan agreement, James enjoyed three consecutive days off, but he had lost this benefit when he filed the Washington petition. James' declaration provided:

> I had obtained a new job in Connecticut, and moved there from Arizona in February 2018. Tina moved from Arizona to Spokane in July 2018. At the time that we agreed to the schedule, I had a different job, and my hours have since changed. . . .
>
>     . . . .
>
> My current [2020] job does not allow me three days off, *as was the case when we agreed to the current* [*2018*] *schedule*. It is nearly impossible for me to fly to Spokane and have any meaningful contact with my daughter when I only get two days off in a row.

CP at 22-23 (emphasis added).

Because the superior court commissioner's ruling erroneously dismissed Michael James' petition for failure to allege an involuntary change in work schedule, the commissioner did not address whether the merits of James' pleadings presented adequate cause to advance to a full hearing or whether the modification should be granted. A threshold question in a modification proceeding is whether circumstances have changed substantially since the entry of the prior parenting plan or were unknown to the court that entered the prior plan. *In re Marriage of Hoseth*, 115 Wn. App. 563, 570, 63 P.3d 164 (2003). While an involuntary change in work schedule may constitute a change in circumstances, the trial court retains broad discretion to determine whether that change is substantial. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 106, 74 P.3d 692 (2003). On remand, we instruct the superior court to consider whether the involuntary change in James' piloting schedule from three-days off to two-days off constitutes a substantial change providing adequate cause for a full hearing.

11

We also identify the question of whether Michael James' proposed modification is "a minor modification."  The looser test of RCW 26.09.260(5) applies "if the proposed modification is only a minor modification."  We remand for the superior court to assess whether James requests a minor modification.

CONCLUSION

We reverse the superior court's dismissal of Michael James' petition for modification of the 2018 parenting plan and remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, A.C.J.                              Pennell, J.

12